Pearl S. WHITTAKER, Administratrix of
The Estate of Vance E. Whittaker,
Deceased, Appellant,

v.

Mary E. VAN FOSSAN, Appellee.

No. 8427.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 16, 1961.

Decided Dec. 14, 1961.

Thomas V. Monahan, Winchester, Va. (Joseph A. Massie, Jr., George G. Snarr, Jr., and Massie, Snarr & Monahan, Winchester, Va., on brief), for appellant.

J. Lynn Lucas, Luray, Va. (W. W. Wharton and Wharton, Aldhizer & Weaver, Harrisonburg, Va., on brief), for appellee.

Before BOREMAN, BRYAN and BELL, Circuit Judges.

BRYAN, Circuit Judge.

An ambulance driven by Vance E. Whittaker and a Cadillac car operated by Mary E. Van Fossan collided on a public highway near Winchester, Virginia, killing him and injuring her. His administratrix began the action now on review to recover damages of Mary E. Van Fossan for his death. The defendant counterclaimed for her injuries and consequent expenses. No recovery was allowed either party by the jury.

The administratrix appeals, asking for a retrial limited to damages, or failing that, an entirely new trial. She lays error to the District Court in admitting certain opinion evidence on the speed of the ambulance, and in declining to charge upon last clear chance in respect to the Cadillac driver and upon sudden emer-

gency as applicable to the ambulancier. These assignments we find to be well taken.

The underlying facts are these. After dark in the evening of December 17, 1958 Mary Van Fossan, driving her Cadillac south on U. S. Highway 522, was looking for a motel on the east side of the road, that is, to her left. Missing the north entrance, she undertook to go into its south driveway. To do so, of course, necessitated her crossing the northbound lane.

Meanwhile, an ambulance, owned by the Winchester Volunteer Rescue Squad and driven by Vance Whittaker, was answering an emergency call. Headed north on highway 522, it was rapidly approaching the motel area from the south. Lights on the two vehicles were adequate and were adequately operating. The area was sufficiently built up to be described as a village, with incidental activity of people and cars. Whittaker was familiar with the locale. A speed limit of 45 m. p. h. was posted, but properly equipped and covered by the requisite liability insurance, the ambulance was permitted by law to exceed this limit if its speed did not become unreasonable in the circumstances. 1950 Va.Code 46.1–199, as amended.

The weather was clear, the road—two lanes—level and straight; the asphalt surface was dry, and had a width of 21 feet abutted by shoulders of 6 to 8 feet. Additionally, the visibility between the closing vehicles was unobstructed for at least 1000 feet, the Cadillac's turning blinkers were in action, the ambulance's siren and warning lights giving alarm, and there was no other impeding traffic. Yet the two collided. The front of the ambulance plowed into the middle right side of the Cadillac when the latter—heading into the motel drive—was half on and half off the highway pavement. Brake marks, 68 feet in length and leading to the collision point, were left in the northbound lane by the ambulance. It came to a stop 31 feet beyond; the Cadillac was displaced 8 feet north of the point of impact.

The administratrix's first exception is to the trial court's admission of the testimony of an "expert" giving an opinion upon the speed of the ambulance which he deduced from the brake marks, the extent of the damage to the vehicles and the distance each vehicle moved after collision. His conclusions were premised in part on a calculation under Virginia's statutory tables, 1950 Va.Code 46.1–195, as amended. The tables give the "speed and stopping distances" to be noticed by the courts, derived from "experiments made with motor vehicles, unloaded except for the driver, equipped with four-wheel brakes, in good condition, on dry, hard, approximately level stretches of highway free from loose material". 1950 Va.Code, as amended, supra at 46.1–195 (b).

Witness' process was to reverse the reading of the table and compute the speed from the length of the marks, i. e. a total of 99 feet stopping distance indicates approximately 43.5 m. p. h. For this he is not assailed. The objection is directed at the witness' enlargement on this answer in adding, "Of course, we know the speed was much greater than that" and "perhaps as high as seventy". The increased reckoning was his own figure. His reasoning was that the tables contemplate simply a stop at the termination of the marks without impediment; but the arrest of the ambulance did not so occur. The degree of damage to each automobile and the continuation of the ambulance on its course, overcoming the resistance of the Cadillac, were his basis for estimating the additional speed.

■■ Obviously, the witness' translation into miles per hour of the damage to the vehicles and the continued advance of the ambulance despite the obstructive force of the Cadillac is not acceptable foundation for an expert opinion. But assuming their effect was determinable, he still did not consider other contributing elements, such as the respective weights of the vehicles and the momentum of the Cadillac. Even if he were competent to render the opinion he ventured, it was not receivable if he failed to take into

account every relevant factor. Kale v. Douthitt, 274 F.2d 476 (4 Cir. 1960). Neither was the opinion, which he offered the jury, on what would have been the "normal arc" and the "normal acceleration" of the Cadillac in crossing the highway from its stop preparatory to entering the motel driveway. Just what was "normal" in either instance was not defined in the record, if indeed it was subject to expert determination.

Because the witness was, of course, accorded the status of an expert, his testimony in these matters went to the jury with corresponding emphasis. That others, non-expert but eye-witnesses, also gave judgments of speed does not mollify the damage of the "expert", for the range of their estimates was far less than his, running from 50 to 60 m. p. h.

The District Judge's submission of the case is here questioned in two particulars. The first is the refusal of the trial judge to grant the prayer of the ambulance driver's administratrix for an instruction on the last clear chance, if any, of the Cadillac driver to avoid the collision. It was requested when a similar instruction relating to the ambulance was approved. On the facts as recounted, we think the jury should have been told that the Van Fossan Cadillac was bound to avoid the other car if it had a reasonable opportunity, despite earlier negligence chargeable to the ambulance. Friedman v. Morris, 209 F.2d 886, 889 (4 Cir. 1954). The explanation was needed by the jury for a complete understanding of the ambulance's accusal of the Cadillac of negligence.

The remaining exception charges as error the denial of an instruction asked by the ambulance on the rule of sudden emergency. We think it should have been granted. The doctrine contemplates the instance where a driver is confronted with a sudden peril not of his own making and which to avoid he must act immediately and without time to ponder. The principle is that if a driver so situated acts as an ordinary person might in the circumstances, he will be exoner-ated of negligence for a departure from what would have appeared upon deliberation to be a more appropriate and reasonable maneuver. Pickett v. Cooper, 202 Va. 60, 116 S.E.2d 48, 51 (1960) ; Jones v. Hanbury, 158 Va. 842, 164 S.E. 545, 550 (1932). The trial judge felt that the sudden emergency rule applied only when there was an actual alteration of course to evade the hazard. He concluded that as the ambulance had not changed its course the rule had no place in the case.

But the departure warranting the instruction, we think, is not confined to a physical diversion in course. The rule is broader, comprehending a deviation in the form of an omission to do what, on cooler and calmer thought, would have been a more reasonable way to solve or minify the predicament. Thus it may excuse a persistence in the normal lane of travel when a safer movement would have been to divert from that lane.

This is precisely the instant issue. The Cadillac insists that the ambulance could have escaped collision by bearing into its left or wrong lane. To rebut this argument, the ambulance urges it was acting in extremis, solely on the other's fault, and its resolution to hold course was necessarily momentary and under emergent stress. It contends that these circumstances absolve it of negligence, even if there was error in the decision. Call for this instruction becomes plainer when it is noted that the Court, in its last clear chance charge for the Cadillac, quite correctly told the jury that the ambulance should have avoided the Cadillac if opportunity permitted and, in another connection, that negligence on the part of the ambulance would defeat its recovery altogether.

The motion of Whittaker's administratrix for a new trial must be upheld, her motion for a final judgment of liability denied. As the defendant Van Fossan did not appeal the judgment denying her counterclaim, the second trial will be on the administratrix's claim only.

Reversed and remanded.