# Richmond

## Taylor P. Grasty, Admr., Etc. v. Delma L. Tanner, Admr., Etc.

January 17, 1966.

Record No. 6085.

Present, All the Justices.

*George R. St. John* (*Joseph W. Richmond,* on brief), for the plaintiff in error.

*Vance M. Fry* (*Higginbotham & Fry,* on brief), for the defendant in error .

I'ANSON, J., delivered the opinion of the court.

Plaintiff, Delma L. Tanner, administrator of the estate of Delma L. Tanner, Jr., instituted this action against the defendant, Taylor P. Grasty, administrator of the estate of Fielding Lewis Grasty, to recover for the wrongful death of plaintiff's decedent while he was riding as a guest passenger in an automobile operated by Fielding L. Grasty, defendant's decedent. A jury trial resulted in a verdict for the plaintiff, upon which the trial court entered judgment, and defendant is here on a writ of error.

Defendant contends that the trial court erred (1) in permitting an expert witness to testify as to the speed of the Grasty automobile at the time of the impact; (2) in holding that the evidence was sufficient to support the jury's finding that Grasty was guilty of gross negligence which was a proximate cause of the accident, and (3) in granting plaintiff's instruction No. 1.

The accident occurred near Shadwell, in Albemarle county, Virginia, on August 28, 1963, at approximately 12:15 A.M., on route 22, when the car operated by Grasty failed to negotiate a curve to the left and ran off the road and struck a clump of four locust trees, which a photograph shows to be a few feet from the highway.

On the night in question Grasty, Delma L. Tanner, Jr., and Thomas Morin left Charlottesville on route 250 to return to their homes in Orange. Upon arriving at the intersection of route 250 with route 22, the Grasty car turned into route 22. Route 22 is a two-lane hard-surfaced road, 22 feet wide, and the speed limit is 55 miles per hour. For traffic headed northeasterly toward Orange, approximately .2 of a mile from the intersection of routes 250 and 22, there was a directional sign for a curve in the road, reading "Maximum Safe Speed 35 Miles Per Hour." Two solid white lines extended along the center of the road at the beginning of the curve. The weather was clear and the road dry. Grasty had traveled over the road many times before and was familiar with it.

There were no surviving witnesses to the accident, but shortly thereafter several people arrived on the scene and removed the three occupants from the car. Tanner and Morin were apparently killed instantly and Grasty died on his way to the hospital.

The investigating officer testified that marks in the grass along the shoulder of the road, which he traced for a distance of 200 feet to the clump of trees, indicated that the car gradually began leaving the hard surface at the break in the curve in the highway; that the car struck two marker poles on the side of the highway before hitting the trees; and that the automobile was demolished by the force of the impact.

There was evidence that the Grasty car passed an automobile, driven by Lawrence Coleman, which was traveling between 60 and 65 miles per hour, on route 250, about 2.8 miles from the scene of the accident, and when Coleman arrived at the scene several other people were already there.

Dr. William Zuk, a professor in the engineering school of the University of Virginia and consultant to the Virginia Council of Highway Investigative Research, examined the car 20 days after the accident. He testified that he found its long main frame, which was 4½ inches by 5½ inches, ⅛ of an inch thick, pushed back four feet from its normal position; that the steel motor frame, 3 by 4 inches, had been pushed back two feet; that the motor block, transmission unit, sheet metal work and bumper were damaged; and that the right front wheel, normally measuring 15 inches in diameter, had collapsed like an accordian to 9 inches and had been pushed back so that it pressed the front wall of the passenger compartment back into the compartment itself. On the basis of those facts, an examination of the photographs, a view of the scene of the accident, and allowing 4000 pounds for the weight of the car and 400 pounds as the weight of the three occupants, he said that he could determine the speed of the automobile at the time of the impact by the application of the conservation of energy principle, wherein the force required to damage metal of certain known properties is equal to the change in the kinetic energy of the mass, and the change in kinetic energy of the mass can be related to the velocity, the speed. He was permitted to state that in his opinion the Grasty car was traveling at a speed of approximately 62.5 miles per hour at the time of the impact. He admitted on cross-examination that he had not considered any extra weight that might have been in the trunk of the car, or the amount

of gasoline in the tank, and that he did not know the exact weight of the three passengers, but stated that he had considered certain unknown variables in fixing the speed. He did not know the condition of the automobile before the accident.

Defendant argues that the opinion evidence of Dr. Zuk as to the speed of the Grasty car at the time of the impact was inadmissible.

There is a conflict of authority as to the admissibility of evidence of an expert regarding speed of a motor vehicle derived from examination of a damaged vehicle and surrounding conditions and not from observation of the vehicle in motion. The greater weight of authority appears to be that such opinion evidence of an expert witness is inadmissible on the ground that the jury could draw a conclusion from the facts as well as the witness. 32 C. J. S., Evidence, § 546 (88), pp. 319-324; Annotations: Evidence-Speed-Condition of Car, 133 A. L. R. 726, and 93 A. L. R. 2d 287-300, and the numerous cases there cited. See also "Automobile Accident Analysis by Expert Witnesses," 44 Va. L. Rev. 789, 794, 795.

It is settled law in Virginia that expert evidence is inadmissible on matters of common knowledge or those as to which the jury are as competent to form an intelligent and accurate opinion as the witness. *Venable* v. *Stockner*, 200 Va. 900, 904, 905, 108 S. E. 2d 380, 383, 384; *Richardson* v. *Lovvorn*, 199 Va. 688, 693, 101 S. E. 2d 511, 514; *Strawderman* v. *Commonwealth*, 200 Va. 855, 859, 108 S. E. 2d 376, 379, 380; 20 Am. Jur., Evidence, § 781, pp. 651-652.

In *Venable* v. *Stockner, supra,* the Stockners brought actions to recover for injuries sustained as a result of a collision between their automobile and the tractor-trailer owned by Venable and driven by his employee. They contended that the tractor-trailer was partially on the wrong side of the road at the time of the accident and offered as a witness a "safety engineer, accident analyst" to prove their point. On appeal we held that the opinion of the expert that the tractor-trailer was encroaching on the lane of the Stockner car by "at least a foot and a half," based on the marks in the road and the photographs of the damaged vehicle, was inadmissible on the ground that it was for the jury to say what inferences were to be drawn from the evidence; that the jury was as capable as the expert witness of determining from the facts and circumstances in which lane the collision had occurred; and that the opinion of the expert witness invaded the province of the jury, since the critical issue to be

decided was which of the two vehicles was on the wrong side of the highway.

We see no real difference in the admissibility of expert evidence reconstructing an accident and fixing the point of impact and expert testimony as to speed based on the condition of a car after an accident. Reasonable men were capable of drawing their own conclusions as to the speed of the Grasty car, based on its condition after the impact, and the expert's testimony invaded the province of the jury on a vital issue in the case.

The testimony of Dr. Zuk as to the speed of the Grasty car could have, understandably, had considerable weight with and influence on the jury. His testimony relating to the condition of the car after the accident was not objectionable, but the speed of the car at the time of the impact was a matter for the jury to determine from all the facts and circumstances of the case.

■ Moreover, even if we were of opinion that the testimony of Dr. Zuk as to speed was proper and necessary because the jury needed his scientific knowledge to enable them to arrive at the right of the matter, his evidence was inadmissible for another reason. There were certain variables which he did not consider in arriving at his opinion regarding the speed of the Grasty car at the time of the impact. He assumed, without evidence to support his assumptions, that the combined weight of the three occupants was 400 pounds, and that there was no extra weight in the trunk of the car. He did not take into consideration the amount of gasoline in the tank of the automobile. Nor did he know the condition of the car before the accident. In *Kale* v. *Douthitt*, 274 F. 2d 476 (4 Cir. 1960), it was held that an expert's opinion evidence was not admissible because he did not consider all the variables bearing on the inferences to be drawn from the physical facts. See also *Whittaker* v. *Van Fossan*, 297 F. 2d 245 (4 Cir. 1961).

We hold that the evidence of Dr. Zuk as to the condition of the car when he examined it after the accident was admissible, but his opinion as to the speed of the Grasty automobile at the time of the impact, which he did not see in motion, was inadmissible.

■ Defendant next argues that the evidence was insufficient to support the finding that Grasty was guilty of gross negligence which was a proximate cause of the accident, since there is no evidence as to how and why the accident occurred.

Gross negligence is never presumed from the mere happening of

an accident. The burden was on the plaintiff to show by a preponderance of the evidence that the host, Fielding L. Grasty, operated his automobile in such a manner as to show an "utter disregard of prudence amounting to complete neglect of the safety" of his guests, and that such negligence was a proximate cause of the accident. *Richter* v. *Seawell,* 183 Va. 379, 382, 32 S. E. 2d 62, 63; *Keen* v. *Harman,* 183 Va. 670, 675, 33 S. E. 2d 197, 198, 199; *Dishman, Adm'r* v. *Pitts, Adm'r,* 202 Va. 548, 551, 118 S. E. 2d 509, 511; Code § 8-646.1.

Plaintiff put great weight and reliance on the opinion evidence of Dr. Zuk as to the speed of the Grasty automobile at the time of the impact to establish gross negligence, but since we have ruled that this evidence was inadmissible it will not be considered. He did argue, however, that even without that evidence the testimony of the witness Coleman and the physical facts testified to by the investigating officer and Dr. Zuk showed that Grasty operated the automobile in utter disregard of prudence amounting to complete neglect of the safety of his guests, and thus he had established gross negligence.

Coleman's evidence that the Grasty car passed him when he was traveling at a speed of 60 to 65 miles per hour two and eight-tenths of a mile before the accident does not establish, nor is it subject to the inference, that the vehicle was traveling at the same speed when it left the highway and crashed into the clump of trees. The Grasty car went out of Coleman's sight soon after it passed him and he did not see it again until after the accident.

The physical facts may justify the inference that the car was traveling at considerable speed when it struck the clump of trees. But even though the automobile was demolished when it struck the immovable object, there is nothing to indicate that the speed itself was so great as to constitute gross negligence which was a proximate cause of the accident. The burden was on the plaintiff to establish negligence by a preponderance of the evidence, and there must be more than the probability of a negligent act. It is elementary that an inference cannot be drawn from a presumption; it must be founded on some fact legally proven.

Here the evidence does not show what caused the automobile to leave the highway or the speed it was traveling at the time. One of plaintiff's exhibits shows the right front tire was blown out. The accident may have resulted from the blow-out, the accelerator sticking, a defect in the car's steering mechanism, or many other causes.

It is true that gross negligence may be proved by circumstantial evidence (*Hackley* v. *Robey*, 170 Va. 55, 195 S. E. 689) but in order for plaintiff to prevail the evidence must show something more than that the accident may have resulted from one of two causes, for one of which the defendant is responsible, and for the other of which he is not. *Richter* v. *Seawell, supra*, 183 Va. at pp. 382, 383, 32 S. E. 2d at p. 64; *Barnes* v. *Barnes*, 199 Va. 903, 907, 103 S. E. 2d 199, 202.

To uphold the judgment in this case it would be necessary to resort to pure speculation, conjecture or guess as to the proximate cause of the accident.

Having concluded that the plaintiff has not shown gross negligence on the part of defendant's decedent which was a proximate cause of the accident, it is unnecessary for us to consider the objection to the instruction complained of.

For the reasons stated, the judgment of the court below is reversed and set aside and final judgment is here entered for the defendant.

*Reversed and final judgment.*