## Richmond

DANNY DALE PETERS v. MARGIE S. SHORTT, ADMINISTRATRIX, ETC.

November 26, 1973.

Record No. 8185.

Present, Snead, C.J., I'Anson, Harrison, Cochran, Harman and Poff, JJ.

*Norman K. Moon* (*Edmunds, Williams, Robertson, Sackett, Baldwin & Graves*, on brief), for plaintiff in error.

*W. M. Abbitt* (*Harry G. Lawson* [*Neb.*], on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

The plaintiff, Margie S. Shortt, Administratrix of the estate of Roger Ward Shortt, deceased, recovered a judgment in the trial court for $38,000 against Danny Dale Peters (defendant or Peters) for the wrongful death of Roger Ward Shortt (Shortt). The jury, by its verdict, apportioned these damages as $500 for funeral expenses, $12,-500 for solace to Shortt's widow, Brenda Shortt, and $25,000 for the financial or pecuniary loss suffered by the widow.

Upon appeal the defendant argues that the verdict should be set aside on four grounds. He says that the trial court erred in: (1) holding, as a matter of law, that Shortt was a paying passenger rather than a guest in the defendant's car; (2) allowing the widow to recover for financial or pecuniary loss under the evidence presented; (3) failing to grant contributory negligence instructions tendered by the defendant; and (4) permitting the investigating officer, over objection, to express an opinion as to what would have been a maximum safe speed for the defendant's vehicle considering the roadway and circumstances existing at the time of the wreck.

Shortt was killed at about 11:45 p.m. on May 27, 1971, when the defendant's car, in which Shortt was riding, overturned on State Route 651, a narrow, graveled secondary road, in Appomattox County.

Shortt and Peters, who had been acquaintances for seven or eight years and "close" friends for two years, were students in their third year at Virginia Polytechnic Institute and State University (V.P.I.) at Blacksburg where each was pursuing a course of study in forestry.

As a part of their course of study, Shortt and Peters were required to attend a three-week field training program (spring camp) at Holiday Lake in Appomattox County.

Shortt and his wife resided in Blacksburg. Mrs. Shortt, who was employed in Christiansburg approximately eight miles away, regularly used her husband's car to commute to work. In order to leave his car with his wife, Shortt arranged to ride from Blacksburg to Appomattox with the defendant. The defendant testified that no agreement was made about sharing the cost of gasoline on the trip prior to commencing the trip to spring camp almost three weeks before the fatal crash. On the way to Appomattox, however, Shortt and Peters agreed "that he [Shortt] would buy one tank, then I [Peters] could buy the next. We would split the cost."

On one weekend during spring camp both Shortt and Peters returned to Blacksburg. They obtained "a ride," however, and Peters'

car was not used on that occasion. When Peters testified, he was unable to recall whether any additional gasoline had been purchased for his car after Shortt filled it with gasoline on the way to Appomattox.

On May 27, the night before spring camp was to end, the V.P.I. Forestry Club "threw a party . . . to celebrate the end of spring camp." This party was held out of doors at the farm of Malcolm J. Coleman approximately 2-½ miles from Holiday Lake.

Shortt, Peters and another student rode in Peters' car from Holiday Lake to the Coleman farm, arriving there at approximately 8:30 p.m. When they arrived, Peters observed "[p]eople mostly were sort of standing around. There was some beer and people were drinking beer." Both Shortt and Peters drank "some beer."

The fatal crash occurred as Peters, Shortt and three other students were returning to Holiday Lake from the Coleman farm. Peters testified that he was driving at approximately 40 miles per hour along the graveled road when he lost control of his car in the loose stone on a curve to his left. The car "started fishtailing," then ran up an embankment and "flipped over."

The speed limit at the wreck scene was 55 miles per hour, the road surface was dry and the weather was clear. The investigating officer, Trooper G. Howard Gregory, testified, in detail, about the physical characteristics of the scene of the accident and the results of his investigation. Peters told Gregory that he was driving from 40 to 45 miles per hour when he lost control of his car on the loose gravel at the curve.

Trooper Gregory testified that he detected the odor of alcohol on Peters' breath and that his clothes were "generally disheveled." After talking with Peters for a few minutes he noticed that Peters' speech was "slightly slurred." Gregory further testified, without objection, that a blood sample taken from Peters at 2:10 a.m. on May 28 showed a blood alcohol content of 0.13% by weight.

Trooper Gregory was permitted to testify, over objection, that "[a]t this particular time and location, curves and darkness, a person being unfamiliar with the road, I would estimate maximum safe speed thirty or thirty-five miles an hour on this curve. That is strictly my opinion."

The parties stipulated that blood samples taken from the defendant and Shortt's body by the medical examiner showed a blood alcohol content of 0.13% by weight.

Dr. Walter D. Gable, Deputy Chief Medical Examiner of Virginia,

testified as an expert in pathology. He described the effects of alcohol on the human body and testified, without objection, that "[i]n my opinion, anyone who has a 0.13 blood alcohol is intoxicated." He further expressed the opinion that anyone with a 0.13 blood alcohol could not safely operate a motor vehicle.

Malcolm J. Coleman testified that he talked with Peters for about an hour before Peters got in his car to leave Coleman's farm. At that time Coleman testified that ". . . [h]is [Peters'] condition was all right as far as I could see, he could talk all right . . . [and] he walked all right." Coleman followed the Peters' car from the scene of the party to the public road over ". . . a winding [farm] road . . . around a hill [and] up the creek." He observed that his car operated normally and said ". . . I didn't see anything wrong with his driving."

The evidence presented by the plaintiff disclosed that Shortt was a full-time student at V.P.I. He married Brenda Shortt on August 2, 1969, shortly after completing his freshman year at V.P.I. While Mrs. Shortt worked to assist her husband while he was completing his education, Shortt was employed during summer vacation in 1970. During this period, he earned approximately $2,000 of a total family income of approximately $5,000 during the year and his earnings were used to help defray family expenses. Shortt had already obtained a job with his former employer for the summer of 1971.

The first argument raised by the defendant, i.e. that the trial court erred in holding as a matter of law that Shortt was a paying passenger in Peters' car, is, we think, without merit. The defendant's own testimony shows an agreement between him and Shortt to share the expenses of gasoline for Peters' car from the time of the agreement until they returned to Blacksburg from spring camp. Whether the agreement was made before or after the journey commenced is of little importance here since the defendant concedes the agreement was made. The benefit the defendant received amounted to more than a gratuitous gesture or social amenity. It was a substantial pecuniary contribution to the expense of operating Peters' car during this period, and, as such, was a consideration for transportation. *Bernard* v. *Bohanan*, 203 Va. 372, 376, 124 S.E.2d 191, 194 (1962), *Sturman* v. *Johnson*, 209 Va. 227, 232, 163 S.E.2d 170, 174 (1968).

We next deal with defendant's claim that the trial court erred in allowing Mrs. Shortt to recover for financial or pecuniary loss.

The defendant argues that the element of damage should not have been included in the court's instructions to the jury because the evi-

dence disclosed that Shortt was a full-time student and was not making any contribution to the support of his wife at the time of his death.

We do not agree. While the evidence disclosed that Shortt was a full-time student, who worked only during the summer vacation from school, and the major part of the family income came from his wife's earnings, it also discloses that Shortt earned approximately $2,000 during the summer of 1970, or 40% of the total family income for the year. Shortt's earnings were used to assist in family expenses for him and his wife.

While dependency within the meaning of the Virginia Wrongful Death Statute, Code § 8-636, means actual dependency, it need not be total dependency but may be partial. The fact and degree of dependency are matters for determination of the jury upon proper evidence. *Pugh* v. *Yearout*, 212 Va. 591, 595, 186 S.E.2d 58, 62 (1972). Here, since there was evidence of partial dependency, we find no error in allowing the jury to fix the fact and degree of such dependency and to fix appropriate damages based on this evidence.

Now we will consider the defendant's claim that the trial court erred in not granting an instruction telling the jury that the deceased would have been contributorily negligent and thus barred from a recovery, if Shortt knew or in the exercise of reasonable care should have known, that Peters' judgment and ability to drive his car were impaired by reason of drinking and that Shortt thereafter failed to use reasonable care for his own safety by "refusing to ride with [Peters], by warning him or protesting, or leaving the vehicle at the first reasonable opportunity."

That this argument lacks merit becomes apparent when we look at the evidence before us of Peters' drinking, demeanor and conduct prior to the wreck. Although Peters admitted that both he and Shortt drank "some beer," the evidence of Malcolm J. Coleman, which was the only other evidence of Peters' condition prior to the crash, was that Peters acted normally and that there was nothing unusual about his manner, speech or walk. Coleman's testimony revealed nothing unusual in the manner in which Peters drove his car. Thus it appears that there was not sufficient evidence to support the proffered instruction and we find no error in refusing it.

The final point to which we must address ourselves is the defendant's argument that the court erred in permitting Trooper Gregory to express an opinion as to what would have been a maximum

safe speed at the crash scene under conditions existing at the time of the crash.

We agree that this was error, for it is settled law in Virginia that expert evidence is inadmissible on matters of common knowledge or those as to which the jury are as competent to form an intelligent and accurate opinion as the witness. *Grasty* v. *Tanner*, 206 Va. 723, 726, 146 S.E.2d 252, 254 (1966).

But this error was, in our opinion, rendered harmless by the other evidence in the case. The trooper had testified and described the scene of the accident in detail, photographs which graphically depicted the scene had been admitted in evidence and the defendant's own testimony disclosed that the wreck occurred because he drove his vehicle over the unfamiliar narrow road covered with loose gravel at so great a speed as to cause him to lose control of his vehicle.

Since fair minded men could draw but one conclusion from this evidence, that the defendant exceeded a safe speed under conditions then obtaining, the admission of Trooper Gregory's opinion was harmless error. *Norfolk Southern Ry. Co.* v. *Rayburn*, 213 Va. 812, 819, 195 S.E.2d 860, 866 (1973).

*Affirmed.*