## Richmond

ROBERT S. THORPE, JR.

V.

COMMONWEALTH OF VIRGINIA

June 18, 1982.

Record No. 811394.

Present: All the Justices.

*Geo. P. Blackburn, Jr. (John C. Hale; Duvall, Blackburn and Hale*, on briefs), for appellant.

*Jeffrey A. Spencer, Assistant Attorney General (Gerald L. Baliles, Attorney General; Walter A. McFarlane, Deputy Attorney General*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

A jury found Robert S. Thorpe, Jr., guilty of involuntary manslaughter in the traffic death of Christopher Gainer and fixed his punishment at confinement in jail for six months and payment of a fine in the amount of $1,000. By final order entered May 22, 1981, the trial court entered judgment on the verdict but suspended the jail sentence and permitted Thorpe to pay the fine and costs within two years. On appeal, the dispositive question is whether the trial court erred in permitting an expert in accident

reconstruction to testify concerning Thorpe's speed at the time of the collision.

The accident occurred shortly after 3:00 p.m. on June 6, 1980, at the intersection of Route 123 and Clifton Road, when a loaded 10-wheel gravel truck operated by Thorpe sideswiped and fell across a Ford Mustang operated by Gainer. Crushed in the collision, Gainer died from asphyxiation.

Gary Haines, a Commonwealth witness, testified that he was driving north on Route 123 about 50 miles per hour when he observed a car and a dump truck following him. The truck passed the car, and rapidly overtook and passed Haines when he slowed almost to a stop at an access road. As Haines approached the Clifton Road intersection, he saw the Gainer Mustang stopped with its left-turn signal flashing. (A passenger in the Gainer vehicle testified that Gainer activated his left-turn signal at the intersection). Haines estimated that the truck was exceeding a speed of 50 miles per hour as it entered the intersection. The truck swerved across the double yellow lines, "went up on two wheels," and fell on top of the Mustang. The only signals that Haines observed on the truck were its brake lights.

Officer Grant Trounton, of the Fairfax County Police Department, investigated the accident. Thorpe told Trounton that he believed the Mustang was going to turn right, but when he began to pass it on the left, it moved to the left. The officer said that the posted speed limit on Route 123 approaching the accident scene was 45 miles per hour.

Trounton testified that he and other officers measured "scuff marks that appeared to have been left by the truck." On August 12, 1980, Trounton ran a skid test by driving a police cruiser northbound along Route 123 where he had previously observed the scuff marks. Trounton measured the skid marks laid down by his cruiser at 45 miles per hour and communicated all his information to Officer Hank Hughes, who was represented to be an expert in accident reconstruction.

The Commonwealth presented Hughes as an expert to give his opinion concerning the speed of Thorpe's truck in accordance with a "nationally recognized" formula. Hughes first testified out of the presence of the jury. He said that Trounton's test was made for the sole purpose of ascertaining the resistance of the road surface to obtain the "drag coefficient." Hughes testified that he used Trounton's test data to calculate the minimum speed required to

cause Thorpe's truck to sideslip. Hughes asserted that because the test was conducted only to determine the resistance of the road, the size and weight of the test vehicle in establishing the drag factor were unimportant.

Hughes testified that once he knew the drag factor of the road, he could use the measurements of the "yaw" scuff marks to calculate the minimum speed required to cause the sideslip of a vehicle traveling the arc defined by the scuff marks made by the dump truck. Hughes maintained that he could determine to a reasonable degree of scientific certainty the minimum speed of the truck just prior to impact. He testified that if the Thorpe truck was overloaded, if the load was overbalanced, or if the load shifted, the truck would be more susceptible to turning over. There was evidence that the truck when it left the quarry had a total weight of 53,560 pounds, 4,060 pounds over the legal limit.

Hughes conceded that he never examined the truck and was not familiar with its suspension system, tires, or brakes. He insisted, however, that the suspension system was irrelevant, and that if the brakes on any truck except a tractor-trailer are properly adjusted, they will lock when applied.

Thorpe acknowledged that Hughes was a qualified expert but argued that he was not a physicist or engineer, that he had not examined the truck, or its brakes, wheels, and suspension system, and that he was testifying to speed based on a test made by an automobile rather than a truck. There were too many variables that Hughes had not tested, Thorpe said, to permit him to testify before the jury. Nevertheless, the trial court, overruling Thorpe's objection, permitted Hughes to tell the jury that in his opinion the minimum speed of the Thorpe truck immediately prior to impact was 54.03 miles per hour.

Thorpe testified that he was transporting a full load of gravel from a quarry to a construction site; that his speed on Route 123 as he approached the Clifton Road intersection was 40 to 45 miles per hour; that his truck, when fully loaded, would not move faster than 45 miles per hour; and that the Mustang was several car lengths in front of him at the intersection and had its right-turn signal activated. Thorpe said that he slowed because the traffic light was red and he moved across the yellow line to his left to give the Mustang more room to make its right turn, but as he approached, the Mustang's left-turn signal came on and the car suddenly turned left. Thorpe maintained that he was going 25 to

30 miles per hour, that he applied his brakes but could not stop, and that, to prevent a load from shifting forward, his truck had brakes that did not lock when applied. Because of a car in the intersection, Thorpe said, he could not turn right; when he attempted to turn left into Clifton Road, the truck turned over.

The theory upon which Hughes based his opinion as to Thorpe's speed is that sideslipping, or yawing, occurs when the tendency of the vehicle to go straight ahead (centrifugal force) overcomes the friction holding it to a curved path (traction). Under this theory, if an expert knows the radius of the curved path described by a yawing vehicle and the amount of drag exerted by the road surface, he can calculate the speed at which the centrifugal force of the vehicle overcame the traction of its tires and caused the yawing.

■ The Commonwealth conceded on brief that certain information about the skid marks made in Trounton's test should have been preserved in the record, but was not. Thus, the weather and road conditions at the time of the test and the measurements of the skid marks were relevant factors which are not found in the record. The Commonwealth asks us to assume that, since the trial court permitted Hughes to testify as an expert from information based on Trounton's test, the court must have found that the test was performed under conditions substantially similar to those existing at the time of the accident. We are unable to make any such assumption. This is a criminal case in which a defendant's liberty has been impaired, and we must confine our review of the trial proceedings to the record before us.

■ Results of experiments are not admissible in evidence unless the tests were conducted under conditions which were the same or substantially similar in essential particulars to those existing at the time of the accident. *Featherall* v. *Firestone*, 219 Va. 949, 959, 252 S.E.2d 358, 365 (1979). The tests in the present case were made more than two months after the accident and there is no evidence of similarity in essential particulars.

In *Grasty* v. *Tanner*, 206 Va. 723, 146 S.E.2d 252 (1966), we considered the admissibility of expert testimony as to speed, based upon scientific evaluation of physical evidence. The expert was an engineering professor and consultant. Based on various factors, including his examination of the wreckage of the defendant's car and estimates of the weight of the car and its occupants, the expert opined that the vehicle was traveling approximately 62.5

miles per hour at the time of the accident. 206 Va. at 725, 146 S.E.2d at 254. The witness explained that he could calculate speed by the "application of the conservation of energy principle, wherein the force required to damage metal of certain known properties is equal to the change in kinetic energy of the mass, [which change] can be related to the . . . speed." *Id.* We held, *inter alia*, that the expert had failed to consider certain variables, such as the actual rather than assumed weight of the car occupants, the amount of gasoline in the vehicle, and the condition of the car before the accident, and that the trial court had committed reversible error in permitting the expert to testify concerning speed.

■ As in *Grasty*, we hold in the present case that there are too many missing variables to permit the expert to give his opinion as to speed. We cannot find from the record how Hughes determined the applicable drag factor from the skid marks laid down in Trounton's test runs, or indeed, what drag factor he applied. Hughes did not know the condition of the truck, its brakes, its tires, or the manner in which the weight of its load was distributed. Moreover, his opinion was based upon his assumption, rebutted by the testimony of Haines, as well as that of Thorpe, that the truck's brakes were never applied. What was presented as a scientifically accurate opinion, therefore, comes to us in this record as no more than mere inadmissible speculation.

■ We reaffirm the general rule that the admissibility of expert testimony is within the sound discretion of the trial court, and the standard of review, therefore, is whether the court abused its discretion. *Noll* v. *Rahal*, 219 Va. 795, 250 S.E.2d 741 (1979); *see Landis* v. *Commonwealth*, 218 Va. 797, 241 S.E.2d 749 (1978). We hold that the trial court abused its discretion in admitting Hughes's opinion as to Thorpe's speed. Accordingly, we will reverse the judgment of the trial court and remand the case for a new trial.

*Reversed and remanded.*